1  ALAN J. LAZARUS (State Bar No. 129767)
   KRISTA L. COSNER (State Bar No. 213338)
2  DRINKER BIDDLE & REATH LLP
   50 Fremont Street, 20th Floor
3  San Francisco, California 94105
   Telephone: (415) 591-7500
4  Facsimile: (415) 591-7510

5  Attorneys for Defendant
   SMITHKLINE BEECHAM CORPORATION d/b/a
6  GLAXOSMITHKLINE

ORIGINAL
FILED

E-filing MAY 27 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

                                                      CV 08        2661

11 RANDY NABERS;
   LINDA NAQUIN; JIM D. NIECE; GENE          Case No.
12 OWEN; GENEVIEVE PADDIO; KATHY
   PARCHMAN; RAMON PAULSEN;                  NOTICE OF REMOVAL AND
13 TEDDY POTTS; RALPH PRIM;                  REMOVAL ACTION UNDER 28 U.S.C.
   CYNTHIA REED; DAVID RIDENOUR;             § 1441(B) (DIVERSITY) and 28 U.S.C. §
14 RICKEY L. ROBERTS; ROGER                  1441(C) (FEDERAL QUESTION) OF
   ROBINETT; DANNY ROBINSON;                 DEFENDANT SMITHKLINE
15 BILLY ROE; MARY ROE; EDWARD               BEECHAM CORPORATION d/b/a
   ROGERS; JAMES ROSE; PATRICIA A.           GLAXOSMITHKLINE
16 RUSSELL; MARK RUTHERFORD;
   SHERMAN SEATON,
17
18                  Plaintiffs,

19        v.

20 SMITHKLINE BEECHAM
   CORPORATION d/b/a
21 GLAXOSMITHKLINE and McKESSON
   CORPORATION,
22
                    Defendants.
23

24 TO THE CLERK OF THE COURT:

25        Defendant Smithkline Beecham Corporation d/b/a GlaxoSmithKline ("GSK"),

26 hereby removes to this court the state action described below.  Removal is warranted

27 under 28 U.S.C. § 1441 because this is an action over which this Court has original

28 jurisdiction under 28 U.S.C. §§ 1331 and 1332.

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\400708\1    NOTICE OF REMOVAL AND REMOVAL                                    CASE NO.

## I.    BACKGROUND

1.    On May 20, 2008, Plaintiffs Randy Nabers, Linda Naquin, Jim D. Niece, Gene Owen, Genevieve Paddio, Kathy Parchman, Ramon Paulsen, Teddy Potts, Ralph Prim, Cynthia Reed, David Ridenour, Rickey L. Roberts, Roger Robinett, Danny Robinson, Billy Roe, Mary Roe, Edward Rogers, James Rose, Patricia A. Russell, Mark Rutherford, and Sherman Seaton ("Plaintiffs"), represented by The Miller Firm of Orange, Virginia, commenced this action in the Superior Court of the State of California for the County of San Francisco. A true and correct copy of the Complaint in the action is attached as Exhibit "A " to the Declaration of Krista L. Cosner in Support of Notice of Removal and Removal Action under 28 U.S.C. § 1441(b) and 28 U.S.C. § 1441(c) (Federal Question) of Defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline (hereinafter "Cosner Decl.").

2.    Neither defendant has yet been served with Plaintiffs' Complaint. Cosner Decl. ¶ 9.

3.    There have been no additional proceedings in the state court action.

4.    This is one of many cases that have been filed recently in both federal and state court across the country involving the prescription drug Avandia®. Cosner Decl. ¶ 5. Plaintiffs' counsel, The Miller Firm, has filed Avandia cases in both state and federal courts, but only in the cases filed in California has The Miller Firm named McKesson, or any alleged distributor of Avandia, as a defendant. Cosner Decl. ¶ 6.

5.    On October 16, 2007, the Judicial Panel on Multidistrict Litigation ("JPML") issued an order directing that then-pending Avandia-related cases be transferred and coordinated for pretrial proceedings in the United States District Court for the Eastern District of Pennsylvania, before the Honorable Cynthia M. Rufe, pursuant to 28 U.S.C. § 1407. *See* Transfer Order, *In re Avandia Marketing, Sales Practices and Products Liability Litigation*, MDL 1871 (E.D.P.A.) (a true and correct copy of which is attached as Exhibit "B" to Cosner Decl.). Additional Avandia-related cases pending in federal court, which are common to the actions previously transferred to the Eastern

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\400708\1

NOTICE OF REMOVAL AND REMOVAL

2

CASE NO.

1   District of Pennsylvania and assigned to Judge Rufe, are treated as potential tag-along

2   actions. *See id.*; *see also* Rules 7.4 and 7.5, R.P.J.P.M.L. 199 F.R.D. 425, 435-36 (2001).

3   GSK intends to seek the transfer of this action to that Multidistrict Litigation, *In re*

4   *Avandia Marketing, Sales Practices and Products Liability Litigation*, MDL 1871, and

5   shortly will provide the JPML with notice of this action pursuant to the procedure for

6   "tag along" actions set forth in the rules of the JPML. Cosner Decl. ¶ 7.

7        6.    As more fully set forth below, this case is properly removed to this Court

8   pursuant to 28 U.S.C. § 1441 because GSK has satisfied the procedural requirements for

9   removal and this Court has subject matter jurisdiction over this case pursuant to 28

10   U.S.C. §§ 1331 and 1332.

11   **II.     DIVERSITY JURISDICTION**

12        7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332

13   because this is a civil action in which the amount in controversy exceeds the sum of

14   $75,000, exclusive of costs and interest, and is between citizens of different states.

          **A.     There is Complete Diversity of Citizenship Between Plaintiffs and Defendants**

15

16        8.    The Complaint names twenty-one individual plaintiffs. *See* Cosner Decl.,

17   Exh. A, ¶¶ 10-30:

18        a.    Plaintiff Randy Nabers alleges that he is a "resident" of the State of

19   Tennessee. Accordingly, at the time this action was commenced, he was a citizen of the

20   State of Tennessee. *Id.* at ¶ 10.

21        b.    Plaintiff Linda Naquin alleges that she is a "resident" of the State of

22   Louisiana Accordingly, at the time this action was commenced, she was a citizen of the

23   State of Louisiana. *Id.* at ¶ 11.

24        c.    Plaintiff Jim D. Niece alleges that he is a "resident" of the State of

25   Kentucky. Accordingly, at the time this action was commenced, he was a citizen of the

26   State of Kentucky. *Id.* at ¶ 12.

27        d.    Plaintiff Gene Owen alleges that he is a "resident" of the State of

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\400708\1

NOTICE OF REMOVAL AND REMOVAL

3

CASE NO.

1    Tennessee. Accordingly, at the time this action was commenced, he was a citizen of the

2    State of Tennessee. *Id.* at ¶ 13.

3         e.    Plaintiff Genevieve Paddio alleges that she is a "resident" of the

4    State of Louisiana. Accordingly, at the time this action was commenced, she was a

5    citizen of the State of Louisiana. *Id.* at ¶ 14.

6         f.    Plaintiff Kathy Parchman alleges that she is a "resident" of the State

7    of Tennessee. Accordingly, at the time this action was commenced, she was a citizen of

8    the State of Tennessee. *Id.* at ¶ 15.

9         g.    Plaintiff Ramon Paulsen alleges that he is a "resident" of the State of

10   Kentucky. Accordingly, at the time this action was commenced, he was a citizen of the

11   Kentucky. *Id.* at ¶ 16.

12        h.    Plaintiff Teddy Potts alleges that he is a "resident" of the State of

13   Kentucky. Accordingly, at the time this action was commenced, he was a citizen of the

14   State of Kentucky. *Id.* at ¶ 17.

15        i.    Plaintiff Ralph Prim alleges that he is a "resident" of the State of

16   Tennessee. Accordingly, at the time this action was commenced, he was a citizen of the

17   State of Tennessee. *Id.* at ¶ 18.

18        j.    Plaintiff Cynthia Reed alleges that she is a "resident" of the State of

19   Kentucky. Accordingly, at the time this action was commenced, she was a citizen of the

20   State of Kentucky. *Id.* at ¶ 19.

21        k.    Plaintiff David Ridenour alleges that he is a "resident" of the State

22   of Tennessee. Accordingly, at the time this action was commenced, he was a citizen of

23   the State of Tennessee. *Id.* at ¶ 20.

24        l.    Plaintiff Rickey L. Roberts alleges that he is a "resident" of the State

25   of Kentucky. Accordingly, at the time this action was commenced, he was a citizen of

26   the State of Kentucky. *Id.* at ¶ 21.

27        m.    Plaintiff Roger Robinett alleges that he is a "resident" of the State of

28   Kentucky. Accordingly, at the time this action was commenced, he was a citizen of the

1  State of Kentucky. *Id.* at ¶ 22.

2      n.    Plaintiff Danny Robinson alleges that he is a "resident" of the State

3  of Kentucky. Accordingly, at the time this action was commenced, he was a citizen of

4  the State of Kentucky. *Id.* at ¶ 23.

5      o.    Plaintiff Billy Roe alleges that he is a "resident" of the State of

6  Tennessee. Accordingly, at the time this action was commenced, he was a citizen of the

7  State of Tennessee. *Id.* at ¶ 24.

8      p.    Plaintiff Mary Roe alleges that she is a "resident" of the State of

9  Kentucky. Accordingly, at the time this action was commenced, she was a citizen of the

10  State of Kentucky. *Id.* at ¶ 25.

11      q.    Plaintiff Edward Rogers alleges that he is a "resident" of the State of

12  Kentucky. Accordingly, at the time this action was commenced, he was a citizen of the

13  State of Kentucky. *Id.* at ¶ 26.

14      r.    Plaintiff James Rose alleges that he is a "resident" of the State of

15  Kentucky. Accordingly, at the time this action was commenced, he was a citizen of the

16  State of Kentucky. *Id.* at ¶ 27.

17      s.    Plaintiff Patricia A. Russell alleges that she is a "resident" of the

18  State of Kentucky. Accordingly, at the time this action was commenced, she was a

19  citizen of the State of Kentucky. *Id.* at ¶ 28.

20      t.    Plaintiff Mark Rutherford alleges that he is a "resident" of the State

21  of Tennessee. Accordingly, at the time this action was commenced, he was a citizen of

22  the State of Tennessee. *Id.* at ¶ 29.

23      u.    Plaintiff Sherman Seaton alleges that he is a "resident" of the State

24  of Kentucky. Accordingly, at the time this action was commenced, he was a citizen of

25  the State of Kentucky. *Id.* at ¶ 30.

26      9.    GSK is, and was at the time Plaintiffs commenced this action, a corporation

27  organized under the laws of the Commonwealth of Pennsylvania with its principal place

28  of business in Philadelphia, Pennsylvania, and therefore, is a citizen of Pennsylvania for

1   purposes of determining diversity.  28 U.S.C. § 1332(c)(1).  Cosner Decl. ¶ 8.

2        10.    The remaining named defendant, McKesson, is a Delaware corporation,

3   with its principal place of business in San Francisco, California.  Cosner Decl., Exh. C,

4   ¶ 3. Accordingly, there is complete diversity of citizenship between plaintiffs and

5   defendants.

6        **B.    The Amount In Controversy Requirement Is Satisfied**

7        11.    It is apparent on the face of the Complaint that Plaintiffs seek an amount in

8   controversy in excess of $75,000, exclusive of costs and interest.

9        12.    Plaintiffs allege that they ingested Avandia, and, as a result, "have suffered

10  heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure,

11  stroke and severe injury to the heart leading to cardiac arrest," and have sustained,

12  "physical and financial damages including pain and suffering." *See* Cosner Dec. Exh. A

13  at ¶ 53.  Plaintiffs further allege that Plaintiffs "suffered severe and permanent physical

14  injuries" and endured substantial pain and suffering and extensive medical and surgical

15  procedures." *See id.* at ¶ 70.

16       13.    Plaintiffs allege that they have suffered economic loss, and have otherwise

17  been physically, emotionally and economically injured, and that their injuries and

18  damages are permanent and will continue into the future. *See id.* at ¶ 70.

19       14.    Plaintiffs seek actual and punitive damages. *See id.*

20       15.    Punitive damages are included in the calculation of the amount in

21  controversy. *See Bell v. Preferred Life Assurance Society*, 320 U.S. 238, 240 (1943).

22       16.    Given the allegations set forth above, the face of the Complaint makes clear

23  that Plaintiffs seek in excess of $75,000, exclusive of interest and costs. *See Simmons v.*

24  *PCR Tech.*, 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002).

25       **C.    The Citizenship of McKesson Must Be Ignored Because**
        **McKesson Has Not Been Properly Joined and Served**
26

27       17.    Under 28 U.S.C. § 1441(b), the so-called "forum defendant rule," an action

28  is removable only if none of the parties in interest, *properly joined and served* as

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

6

1    defendants, is a citizen of the State in which such action is brought.  28. U.S.C § 1441(b)

2    (emphasis added).

3        18.    McKesson, although a citizen of California, has not yet been served with

4    the Complaint in this case.

5        19.    Accordingly, because there is complete diversity of citizenship and because

6    no "properly joined and served defendant" is a citizen of this State, it is appropriate that

7    this action be removed to this Court.  *See Waldon v. Novartis Pharmaceuticals Corp.*,

8    2007 U.S. Dist. LEXIS 45809 (N.D. Cal. June 18, 2007); *see also* 28 U.S.C. § 1441(b).

**D.    The Citizenship Of McKesson Must Be Ignored Because McKesson Is Fraudulently Joined**

10       20.    A defendant is fraudulently joined, and its presence in the lawsuit is

11    ignored for purposes of determining the propriety of removal, "if the plaintiff fails to

12    state a cause of action against the resident defendant, and the failure is obvious according

13    to the settled rules of the state."  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067

14    (9th Cir. 2001); *see also Hamilton Materials, Inc. v. Dow Chemical Corporation*, 494

15    F.3d. 1203, 1206 (9th Cir. 2007).

16       21.    McKesson is fraudulently joined because Plaintiffs have failed to make any

17    specific material allegations against it.  Plaintiffs do not even allege that they ingested

18    Avandia that was distributed by McKesson, compelling the conclusion that Plaintiffs

19    have fraudulently joined McKesson in an attempt to defeat diversity jurisdiction. *See,*

20    *e.g., Brown v. Allstate Insur.*, 17 F. Supp. 2d 1134, 1137 (S.D. Cal. 1998) (finding in-

21    state defendants fraudulently joined where "no material allegations against [the in-state

22    defendants] are made"); *Lyons v. American Tobacco Co.*, No. Civ. A. 96-0881-BH-S,

23    1997 U.S. Dist. LEXIS 18365 (S.D. Ala. 1997) (holding that there is "no better admission

24    of fraudulent joinder of [the resident defendant]" than the failure of the plaintiff "to set

25    forth any specific factual allegations" against them).  Plaintiffs cannot cure this

26    deficiency by simply relying on allegations directed toward "Defendants" or GSK alone.

27       22.    Plaintiffs specifically allege that GSK was engaged in the business of

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\40070831

NOTICE OF REMOVAL AND REMOVAL

7

CASE NO.

1   designing, developing, manufacturing, testing, packaging, promoting, marketing,

2   distributing, labeling and/or selling Avandia. *See* Cosner Decl. Exh. A, at ¶ 32. Further,

3   plaintiffs specifically allege that Avandia was created and marketed by GSK; that GSK

4   had longstanding knowledge of Avandia-related dangers which GSK failed to adequately

5   warn and disclose to consumers; that GSK concealed, suppressed and failed to disclose

6   these referenced dangers; that GSK has represented and has continued to represent that it

7   manufactures and/or sells safe and dependable pharmaceuticals; that GSK has failed to

8   adequately warn or inform consumers, such as Plaintiffs or Plaintiffs' prescribing

9   physicians of known defects in Avandia; and that as a result of GSK's omissions and/or

10  misrepresentations, Plaintiffs ingested Avandia. *See id.* at ¶¶ 41, 45-47, 50, 52-53.

11      23.    Plaintiffs also claim, however, that McKesson "packaged, distributed,

12  supplied, sold, placed into the stream of commerce, labeled, described, marketed,

13  advertised, promoted and purported to warn or inform users regarding the risks pertaining

14  to, and assuaged concerns about [ ] Avandia." *See id.* at ¶ 39. These allegations are

15  inconsistent and contradictory, and courts have frequently viewed such inconsistencies as

16  evidence of fraudulent joinder. *See Baisden v. Bayer Corp.*, 275 F. Supp. 2d 759, 762-

17  763. (S.D. W.Va. 2003).

18      24.    Plaintiffs assert claims of: (1) negligence; (2) negligent failure to adequately

19  warn; (3) negligence per se; (4) negligent misrepresentation; (5) breach of express

20  warranty; (6) breach of implied warranty; (7) strict products liability – defective design;

21  (8) strict products liability – manufacturing and design defect; (9) strict products liability

22  – failure to adequately warn; (10) fraudulent misrepresentation; (11) violations of

23  California Unfair Trade Practices and Consumer Protection Law; (12) unjust enrichment;

24  (13) loss of consortium and (14) punitive damages. In these allegations, Plaintiffs aver

25  that collectively, "Defendants" or "Defendants GSK and McKesson," defectively

26  designed and manufactured the product; concealed knowledge of unreasonably dangerous

27  risks associated with the product; failed to conduct adequate and sufficient pre-clinical

28  testing and post-marketing surveillance of the product; failed to provide FDA with

1    complete and adequate information regarding the product; failed to warn consumers

2    and/or their health care providers of certain risks associated with the product; failed to

3    utilize adequate and non-misleading labeling; and made affirmative misrepresentations

4    and omissions regarding the risks associated with taking Avandia. All of these claims are

5    substantively based on the design and manufacture of the product, failure to warn,

6    fraudulent concealment, and inadequate pre-clinical testing and post-marketing

7    surveillance. As a wholesale distributor of Avandia, McKesson played no role in its

8    testing, marketing or advertising. All McKesson did was pass along unopened boxes of

9    Avandia, in unadulterated form, to hospitals and other businesses in the healthcare·

10    industry. *See* Cosner Decl. Exh. D, ¶¶ 6-7.[1]

11        25.    Further, based on the "learned intermediary" doctrine, McKesson bore no

12    duty to warn Plaintiffs. The "learned intermediary" doctrine, the foundation of

13    prescription drug product liability law, provides that the duty to warn about a drug's risks

14    runs from the manufacturer to the physician (the "learned intermediary"), and then from

15    the physician to the patient. *See Brown v. Superior Court (Abbott Labs.)*, 44 Cal. 3d

16    1049, 1061-62, n.9 (1988); *Carlin v. Superior Court (Upjohn Co.)*, 13 Cal. 4th 1104, 1116

17    (1996). It is the physician, and only the physician, who is charged with prescribing the

18    appropriate drug and communicating the relevant risks to the patient. *See Brown*, 44 Cal.

19    3d at 1061-62.

20        26.    GSK and the FDA prepared the information to be included with the

21    prescription drug, Avandia, with the FDA having final approval of the information that·

22    could be presented. Once the FDA has determined the form and content of the

23

24        [1] The Declaration of McKesson's representative, Greg Yonko may be considered by the Court in

25    determining whether McKesson is fraudulently joined. *Maffei v. Allstate California Ins. Co.*, 412
    F.Supp.2d 1049 (E.D. Cal. 2006) ("[t]he court may pierce the pleadings, consider the entire record, and

26    determine the basis of joinder by any means available") *citing Lewis v. Time, Inc.*, 83 F.R.D. 455 (E.D.
    Cal. 1979) ("it is well settled that upon allegations of fraudulent joinder…federal courts may look beyond·

27    the pleadings to determine if the joinder…is a sham or fraudulent device to prevent removal"). *See also·*
    *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19 (9th Cir. 1998) (evidence may be presented by the

28    removing party that there is no factual basis for the claims pleaded against the local defendant).

1    information, it is a violation of federal law to augment the information. *See* 21 U.S.C.

2    §331(k) (prohibiting drug manufacturers and distributors from causing the "alteration,

3    mutilation, destruction, obliteration, or removal of the whole or any part of the labeling"

4    of an FDA-approved drug held for sale); *Brown v. Superior Court*, 44 Cal.3d 1049, 1069

5    n.12 (noting that the FDA regulates the testing, manufacturing, and marketing of drugs,

6    including the content of their warning labels). Therefore, any safety and warning

7    information McKesson had about Avandia would have come from GSK in the form of

8    FDA-approved packaging and labeling. McKesson could not change the labeling it was

9    given by GSK as approved by the FDA without violating federal law. No duty can be

10   found where it requires a party to violate the law to fulfill it.

11       27.    As such, given the lack of a causal connection between the injuries alleged

12   by Plaintiffs and McKesson's conduct, as well as the absence of any legal or factual basis

13   for Plaintiffs' claims against McKesson, McKesson's joinder is fraudulent and its

14   citizenship should be ignored for purposes of determining the propriety of removal.

15   **III.    FEDERAL QUESTION JURISDICTION**

16       28.    This Court has federal question jurisdiction over Plaintiffs' claims under

17   28 U.S.C. § 1331 and the principles set forth in *Grable & Sons Metal Prods., Inc. v.*

18   *Darue Eng'g & Mfg.*, 125 S. Ct. 2363 (2005).

19       29.    As more fully explained below, Plaintiffs have made violations of federal

20   law critical elements of several of their claims.

> **A.    Plaintiffs' Claims Require Construction and Application of the**
> **FDCA and Its Implementing Regulations**

21
22
23
24       30.    Count III of Plaintiffs' Complaint, "Negligence Per Se," explicitly alleges

23   that defendants violated federal law. Plaintiffs claim, *inter alia*, that "[d]efendants

24   violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. Section 301 *et seq.*, related

25   amendments and codes and federal regulations provided thereunder, and other applicable

26   laws, statutes, and regulations." *See* Cosner Decl. Exh A, ¶ 74.

27       31.    Plaintiffs further claim that "[d]efendants' acts constituted an adulteration

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

10

1   and/or misunderstanding *[sic]* as defined by the Federal Food, Drug and Cosmetic Act,

2   21 U.S.C. § 331. . . ." *See* Cosner Decl. Exh A, ¶ 76.

3       32.    Moreover, Count II of the Plaintiffs' Complaint, "Negligent Failure to

4   Adequately Warn," and Count IX, "Strict Products Liability – Failure to Adequately

5   Warn," also require construction and application of the FDCA and implementing federal

6   regulations, which govern approval of prescription drugs and regulate prescription drug

7   manufacturers' public and promotional statements, including all aspects of warnings and

8   labeling.

9       33.    As a currently-marketed prescription drug, Avandia is subject to extensive

10  regulation by the FDA.  The FDCA requires the FDA to ensure that "drugs are safe and

11  effective" for their intended uses, 21 U.S.C. § 393(b)(2)(B), in part by "promptly and

12  officially reviewing clinical research and taking appropriate action on the marketing of

13  regulated products." 21 U.S.C. § 393(b)(1).  The Secretary of the FDA has the authority

14  to promulgate regulations to enforce the FDCA, which are codified in the *Code of*

15  *Federal Regulations*, 21 C.F.R. § 200, *et seq. See* 21 U.S.C. § 371(a).

16      34.    To accomplish its purpose, the FDA maintains a Center for Drug

17  Evaluation and Research (the "CDER").  The CDER regulates pharmaceutical

18  companies' development, testing and research, and manufacture of drugs.  The CDER

19  examines data generated by these companies to conduct a risk/benefit analysis and make

20  an approval decision.  The CDER also ensures truthful advertising for prescription drugs,

21  in part by approving Package Inserts that properly outline benefit and risk information.

22  Once drugs are marketed, the CDER continues to monitor them for unexpected health

23  risks that may require public notification, a change in labeling, or removal of the product

24  from the market.  In short, the CDER evaluates and monitors the effectiveness and safety

25  of prescription drugs. *See* http://www.fda.gov/cder/about/faq/default.htm.

26      35.    Promotional communications to physicians about Avandia are contained

27  within, and restricted by, warning, labeling, and promotional materials, such as the

28  Package Insert, that are approved and monitored by the FDA to ensure the provision of

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

11

1    accurate information about the drug's respective risks and benefits.  Under federal

2    regulations, even claims in promotional labeling or advertising must be consistent with

3    approved labeling.  21 C.F.R. § 202.1(e)(4) (2005).

4        36.    The FDA's responsibility to regulate prescription drugs sold in the United

5    States, and to enforce laws with respect to such drugs, inclusive of the precise content

6    and format of prescription drug labeling (e.g., the instructions, warning, precautions,

7    adverse reaction information provided by manufacturers, and marketing materials), is

8    plenary and exclusive. See 21 U.S.C. § 301, et seq

9        37.    Plaintiffs have explicitly alleged violations of federal law in their

10   "Negligence Per Se" claim, and have made alleged violations of federal law a critical

11   element of their "Negligent Failure to Adequately Warn" and "Strict Products Liability –

12   Failure to Adequately Warn" claims.  Accordingly, Plaintiffs' claims necessarily raise

13   substantial federal questions by requiring the Court to construe and apply the FDCA and

14   its implementing regulations.

15       **B.    Federal Control of Drug Labeling and Warning**

16       38.    On January 24, 2006, the FDA announced a rule that includes a detailed

17   and emphatic statement of the FDA's intention that its regulation and  approval of

18   prescription drug labeling preempt most state law claims related to the adequacy of

19   prescription drug warnings because such claims frustrate "the full objectives of the

20   Federal law." See Requirements on Content and Format of Labeling for Human

21   Prescription Drug and Biologic Products, 71 Fed. Reg. 3922, 3934 (Jan. 24, 2006) ("FDA

22   believes that under existing preemption principles, FDA approval of labeling under the

23   act. . . . preempts conflicting or contrary State law.").  See also In re Bextra and

24   Celebrex Marketing, 2006 WL 2374742 (N.D. Cal., August 16, 2006) (Celebrex

25   decision); In re Bextra and Celebrex Marketing, 2006 WL 2472484 (N.D. Cal., August

26   24, 2006) (Bextra decision);

27       39.    Plaintiffs allege that GSK failed to disclose certain risks of Avandia. See

28   e.g., Cosner Decl. Exh. A, ¶¶ 45-47.  This allegation necessarily requires Plaintiffs to

1  establish that the FDA, which has exclusive jurisdiction over the labeling of drugs, would

2  have approved the warning the Plaintiffs allege should have been given.

3      40.    Accordingly, there is a substantial federal question with respect to whether

4  Plaintiffs can claim that GSK violated state law in light of the FDA's control of

5  Avandia's labeling and warning and its position on conflict preemption.

6          **C.    The Federal Interest In Providing A Forum**

7      41.    The federal government has a strong interest in having a federal court

8  decide several of the issues in this case. Among these issues are:

9          a.      whether any conduct of GSK violated any federal laws or

10                 regulations related to the labeling and marketing of Avandia; and

11         b.      whether the FDA-approved Avandia label was false and misleading,

12                 as alleged by Plaintiff, and whether a state may impose liability on

13                 GSK for not providing more information regarding alleged risks, as

14                 Plaintiff contends GSK should have done.

15     42.    Plaintiffs' claims may be vindicated or defeated only by construction of

16  federal statutes and regulations. The availability of a federal forum to protect the

17  important federal interests at issue is therefore consistent with *Grable*, and determination

18  by a federal court of the substantial and disputed federal issues that lie at the heart of this

19  case would not "disturb any congressionally approved balance of federal and state

20  judicial responsibilities." *Grable*, 125 S. Ct. at 2368.

21  **IV.    CONFORMANCE WITH PROCEDURAL REQUIREMENTS**

22     43.    This Court has jurisdiction over this matter based on federal question and

23  diversity of citizenship, and the present lawsuit may be removed from the Superior Court

24  of the State of California for the County of San Francisco, and brought before the United

25  States District Court for the Northern District of California pursuant to 28 U.S.C. §§

26  1331, 1332 and 1441.

27     44.    Neither GSK nor McKesson have been served with Plaintiffs' Complaint.

28  Cosner Decl. ¶ 9. Therefore, this Removal has been timely filed. *See* 28 U.S.C. §

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

NOTICE OF REMOVAL AND REMOVAL                                                CASE NO.

1446(b).

45.    Since neither GSK nor McKesson have been "properly joined and served" at the time of filing this Removal, GSK is entitled to removal under the plain language of 28 U.S.C. § 1441(b). *See Waldon v. Novartis Pharmaceuticals Corp.*, 2007 U.S. Dist. LEXIS 45809 (N.D. Cal. June 18, 2007). *See also* 28 U.S.C. § 1441(b); Cosner Decl. ¶ 9.

46.    McKesson's consent to remove is not necessary because it is fraudulently joined. *See also, e.g., Easley v. 3M Company, et al.*, 2007 WL 2888335 (N.D. Cal. 2007) *citing Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988).

47.    The United States District Court for the Northern District of California is the federal judicial district encompassing the Superior Court of the State of California for the County of San Francisco, where this suit was originally filed.  Venue therefore is proper in this district under 28 U.S.C. § 1441(a).

48.    Pursuant to the provisions of 28 U.S.C §1446(d), GSK will promptly file a copy of this Notice of Removal with the clerk of the Superior Court of the State of California for the County of San Francisco, where this suit was originally filed.

49.    Defendant reserves the right to amend or supplement this Notice of Removal.

**WHEREFORE**, GSK respectfully removes this action from the Superior Court of the State of California for the County of San Francisco to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. § 1441.

Dated: May 27, 2008

DRINKER BIDDLE & REATH LLP

KRISTA L. COSNER

Attorneys for Defendant
SMITHKLINE BEECHAM
CORPORATION d/b/a
GLAXOSMITHKLINE

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\400708\1

NOTICE OF REMOVAL AND REMOVAL

14

CASE NO.